*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| | : | |
| MARK R. HODGES, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 17-13526 |
| | : | |
| v. | : | |
| | : | **OPINION** |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**WOLFSON, United States District Judge:**

Mark R. Hodges ("Plaintiff"), appeals from the final decision of the Acting

Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability

benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative

Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on

substantial evidence and, accordingly, affirms the decision.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits on November 4, 2013 under Title II of

the Act, alleging disability beginning October 1, 2012 due to rheumatoid arthritis, gout, high

cholesterol, two torn ACLs, high blood sugar, congestive heart failure, high stress levels,

stretched medial collateral ligament, torn cartilage in both knees, and no cartilage in the right

knee. AR 101-02, 115-16, 195-97. The application was denied initially on June 20, 2014, AR

132-36, and on reconsideration on September 6, 2014. AR 138-40. At the administrative hearing

on November 30, 2016, ALJ Karen Shelton heard the testimony of Plaintiff, who was represented by counsel, and an impartial vocational expert. AR 44-100. On March 21, 2017, the ALJ issued a decision finding that Plaintiff could perform his past relevant work as a conciliator and collection clerk, and was thus not disabled within the meaning of the Act. AR 12-43. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-5. Plaintiff subsequently filed this appeal.

Plaintiff contests two aspects of the ALJ's decision. First, he argues that the ALJ erred at step four of the sequential review process, by improperly discounting the opinion of the state psychological examiner. Second, he contends that the ALJ erred by neglecting to call an expert to testify regarding Plaintiff's disability onset date.

## A. Medical Evidence

### 1. Mental Impairments

Plaintiff's appeal focuses on the ALJ's treatment of the medical evidence related to Plaintiff's mental impairments.

In April 2014, Plaintiff was referred to Dr. Christopher Williamson, Psy.D for a consultive mental status evaluation due to "prior allegations of dyslexia and depression." AR 412. Dr. Williamson first reported on Plaintiff's subjective assessment of his mental status. In that regard, Plaintiff stated that he was depressed, characterized his mood as sad, down, and despondent with suicidal ideation 10-20 times a day, but stated "I am too much of a coward, however." AR 412. Nonetheless, Plaintiff denied any issues with anxiety and psychosis, substance use or abuse, and was not then on any medications. AR 412. Plaintiff reported multiple external stressors, most notably that his house was submerged after Hurricane Sandy. AR 412. Plaintiff told Dr. Williamson that he was never married, was not in a relationship, had no

children, and had an estranged sister. AR 412. He reported a positive relationship with his father. AR 412.

On mental status examination, Dr. Williamson noted that Plaintiff suffered from some mental difficulties: he had a depressed mood and congruent affect, chronic suicidal ideation, and could not accurately complete Serial 7s. AR 413. However, he was appropriately dressed and groomed; oriented, pleasant, and cooperative; had normal thought processes; his verbalizations were clear, coherent, and goal-directed; he could repeat up to 5 digits forwards and 4 digits backwards; and could complete simple mathematical calculations. AR 413. Dr. Williamson also noted that Plaintiff had an average fund of knowledge; had intact abstract reasoning; was well oriented to time, place and person; had a grasp of recent current events; and could recall 1 out of 3 objects at 5-and 10-minute intervals. AR 413. Dr. Williamson diagnosed Plaintiff with major depressive disorder (recurrent, severe) and concluded that "despite his limitations, [Plaintiff] is competent to handle his own funds at the present time should it be determined applicable," and "[h]is overall prognosis remains guarded due to the chronicity of his current symptom presentation." AR 413.

Plaintiff also visited Dr. Deepinder Arora in May 2014 for a consultative examination. AR 416-17. Although Dr. Arora focused mainly on Plaintiff's physical condition, he found that Plaintiff was also alert and oriented with an appropriate affect and normal mood, did not suffer hallucinations, and did not have family or social problems. AR 416-17. Like Dr. Williamson, Dr. Arora also noted that Plaintiff complained of feeling depressed and had thought of suicide in the past. AR 416.

There is also some evidence in the record regarding Plaintiff's mental health from after

Plaintiff's Date of Last Insured ("DLI") of March 31, 2015.[1] At five visits with Dr. Sushama

Mody in July and November 2015 and September 2016, Plaintiff was alert and oriented with a

normal mood and affect. AR 465, 471, 477, 481-82, 485-86. At a November 2015 visit with Dr.

Joseph Clemente, Plaintiff was alert, oriented, and cooperative, with an appropriate mood and

affect and normal judgment. AR 557.

2.  Medical Opinion Evidence

Plaintiff was evaluated by two State Agency Psychologists: Ellen Gara, Psy.D. and Jane

Shapiro, Ph.D. In May 2014, Dr. Gara independently reviewed the record and opined that

Plaintiff had moderate restriction in daily activities; no difficulties in maintaining social

functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated

episodes of decocompensation. AR 106. With regard to concentration, persistence and pace, Dr.

Gara opined that although Plaintiff reported problems with completing tasks, concentration,

following instructions, AR 111, Plaintiff, nonetheless, could understand, remember, and execute

simple instructions; sustain concentration, persistence, or pace; respond to supervision; and adapt

to changes in simple work settings. AR 111. On reconsideration in August 2014, Dr. Shapiro

opined that Plaintiff had mild restriction in daily activities; mild difficulties in maintaining social

functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no

repeated episodes of decompensation. AR 120. Dr. Shapiro recounted essentially the same

symptoms as Dr. Gara, indicating that, despite some problems with concentration, Plaintiff could

---

[1] While the existence of a pre-existing disability can be proven by a retrospective opinion, "such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status." *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (citing *Jones v. Sullivan,* 949 F.2d 57, 59-60 (2d Cir. 1991)).

do simple math; understand, remember, and execute instructions; sustain concentration, persistence, or pace; respond to supervision; and adapt to simple work settings. AR 125.

### 3. Physical Impairments

Although not directly relevant to this appeal, I will briefly recount the medical evidence regarding Plaintiff's physical impairments. In November 2013, Plaintiff visited Dr. Anil Khandelwal, M.D., who diagnosed Plaintiff with hyperlipidemia, diabetes, hypertension, rheumatoid arthritis, gout, Hepatitis C, and obesity. AR 403-407. In May 2014, Plaintiff visited Dr. Arora for a consultative examination, with complaints of hand and wrist rheumatoid arthritis and shoulder bursitis. AR 416-20. On examination, Plaintiff had 5/5 (full) strength; 5/5 (full) grip strength; could walk on his toes and heels; could tandem walk; could bend down to his feet; could move side-to-side; had no spinal movement restriction; had no shoulder range of motion restriction; could raise his hands above his head; could touch the nape of his neck and low back; had no knee or hip movement restriction; had no hand, wrist, or elbow movement restriction; and had no red, hot, or inflamed joints. AR 417. Dr. Arora assessed Plaintiff with, in relevant part, a history of rheumatoid arthritis, a history of herniated discs, a history of diabetes, a history of osteoarthritis in the right knee after three surgeries, and a history of ACL tears in the right and left knees. AR 420.

### B. Adult Function Reports

Plaintiff and his roommate, Brandon Knowles, completed Adult Function Reports. In Plaintiff's report, completed May 14, 2014, Plaintiff reported feeling depressed all the time, such that, at times he did not feel like doing anything; found it very hard to concentrate; took care of his pets; and did not get along well with his sister and business partners. AR 300-304. He also reported liking movies and watching sports, which he does "all day"; spent time with others,

including at dinner and the movies multiple times a month; had no issues getting along with authority figures; and had no problem handling changes to his routine. AR 304-307.

Knowles' report largely corroborated Plaintiff's own assessment. Knowles reported that Plaintiff had problems concentrating and focusing and sitting for longs periods of time. AR 336. Knowles also noted that Plaintiff had no problems with personal care; prepared his own meals; was capable of managing finances; was a good online poker player; spent time with others, including at dinner and watching movies; did not need someone to remind him to go places; had no problems getting along with others; had no trouble with paying attention or following instructions; got along with authority figures; and had not been laid off from of job because of problems getting along with people. AR 337-41.

### C. Plaintiff's Testimony

At the hearing before ALJ Shelton on November 30, 2016, the vast majority of the testimony concerned Plaintiff's physical impairments, with Plaintiff testifying that that he could not work because of rheumatoid arthritis, osteoarthritis, back pain, and sleep apnea. AR 53, 78-79, 81, 83. Nonetheless, Plaintiff also testified that he was currently working for an attorney part-time settling debts and part-time as a cashier at a convenience store. AR 54-58, 77-78, 86-88. Plaintiff also reported caring for himself (with some difficulty) and for a pet, watching television and movies, listening to music, going for walks, preparing meals, grocery shopping, using public transportation, socializing, typing on a computer (at a reduced pace), using a cell phone, fastening buttons, using zippers, opening loose jars, using eating utensils, preparing food (with only limitations with chopping and crushing food), and opening most doors. AR 60, 84-85, 88-89, 301-03, 305. Moreover, Plaintiff noted that he had a near "photographic memory," stating that, he "remember[s] everything word of mouth" but his "disabilities came from reading, not

from hearing," though he does "read contracts and things like that of nature" for his job working for an attorney. AR 62.

### D. ALJ's Decision

On March 21, 2017, ALJ Shelton issued her decision. AR 12-43. At step two, the ALJ found that Plaintiff had the severe impairments of right knee and lumbar degenerative joint disease, finding that all of Plaintiffs' other alleged impairments, including Affective Disorder, were non-severe. AR 18. At step three, she found that the impairments did not meet or equal one of the listed impairments. AR 29. At step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with lifting and/or carrying no more than 10 pounds; standing and walking for no more than 2 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday with the opportunity to sit for 5 minutes after a half hour of standing and walking; no climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs, kneeling, balancing, stooping, crouching, and crawling; and no exposure to unprotected heights or hazardous machinery. AR 29-30. Relying on the testimony of a vocational expert and Plaintiff's vocational factors, the ALJ found that Plaintiff could perform his past relevant work as a conciliator and collection clerk. AR 38. The ALJ thus determined that Plaintiff was not disabled at any time from October 1, 2012, his alleged onset of disability, through March 31, 2015, Plaintiff's DLI. AR 39.

As Plaintiff challenges the ALJ's mental status RFC, I will recount the ALJ's findings regarding Plaintiff's mental impairments in further detail. The ALJ initially found that Plaintiff did not have a severe mental impairment at step two because Plaintiff's "medically determinable mental impairment of affective disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere." AR 26. In making this finding, the ALJ considered the four broad areas of mental functioning set out in

the disability regulations for evaluating mental disorders and in the Listing of impairments. AR 26.

With regard to the first functional area—understanding, remembering, or applying information—the ALJ found mild limitation. The ALJ considered Plaintiff's and his roommate's subjective reports of problems with memory and following instructions, but noted that no objective evidence supported a finding that Plaintiff had difficulties understanding or applying information. AR 26. As to the next functional area—interacting with others—the ALJ found that Plaintiff had mild limitation; the ALJ balanced Plaintiff's difficulties getting along with his sister and business partner against evidence indicating he had positive relationships with other family members, got along with authority figures, used public transportation, and had relative success obtaining and keeping a job. AR 26-27. In the third functional area—concentrating, persisting, or maintaining pace—the ALJ again found that Plaintiff had mild limitations. AR 27. The ALJ noted that Plaintiff reported problems concentrating (though no problems had been reported with respect to paying attention), but he could complete simple mathematical calculations and could complete Serial 7s. AR 27. The fourth functional area is adapting or managing oneself. In this area, the ALJ again found mild limitation, as Dr. Williamson noted no problems in this area, and Plaintiff himself reported that physical pain limited his ability to manage his personal care needs, and he had no problems with stress or change in routine. AR 28. Ultimately, the ALJ considered these functional limitations related to his depression in assigning a mild limitation in the broad area of mental functioning. AR 28. Because Plaintiff's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas, the ALJ classified the impairment as non-severe. AR 28.

The ALJ then moved to assessing the Plaintiff's mental RFC, and, ultimately, assigned "some weight" to the opinion of the State Agency Psychiatrist, Dr. Shapiro. AR 28-29. Specifically, the ALJ assigned "great weight" to the opinion that Plaintiff had no limitations in social function, and "little weight" to the opinion that Plaintiff had moderate limitation in concentration, persistence or pace, and the conclusion, based on these assessments, that the mental impairments did not impact Plaintiff's RFC to perform his past work. AR 28-29.

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary

evidence in the record that would justify the opposite conclusion, the Commissioner's decision

will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d

Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the

statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate

the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42

U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A). Eligibility for supplemental security income requires the same showing of

disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine

whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether

the claimant has shown that he or she is not currently engaged in "substantial gainful activity."

*Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is

presently engaged in any form of substantial gainful activity, he or she is automatically denied

disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the

ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination

of impairments" that significantly limits her physical or mental ability to do basic work

activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities

are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

These activities include physical functions such as "walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment

is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the

impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1

(the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his

or her impairments are equal in severity to, or meet those on the Impairment List, the claimant

has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §

404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the

ALJ will consider in his or her decision the impairment that most closely satisfies those listed for

purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. §

404.1526(a). If there is more than one impairment, the ALJ then must consider whether the

combination of impairments is equal to any listed impairment. *Id.* An impairment or

combination of impairments is basically equivalent to a listed impairment if there are medical

findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment

List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §

404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the

claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482

U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past

relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no

longer able to perform his or her previous work, the burden of production then shifts to the

Commissioner to show, at step five, that the "claimant is able to perform work available in the

national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step

requires the ALJ to consider the claimant's residual functional capacity, age, education, and past

work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all

the claimant's impairments in determining whether the claimant is capable of performing work

and not disabled.  *Id*.

## III.    DISCUSSION

Plaintiff challenges two aspects of the ALJ's decision. First, he argues that the ALJ erred

at step four of the sequential review process, by improperly overruling the opinion of the state

psychological examiner. Second, he contends that the ALJ erred by neglecting to call an expert

to testify regarding Plaintiff's disability onset date.

### A.  The ALJ's Residual Functional Capacity Assessment

Plaintiff challenges the ALJ's RFC findings, at step four, with regard to Plaintiff's mental

impairments. "Residual functional capacity is defined as that which an individual is still able to

do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*,

220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir.

1999)); *see* 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate

determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc.

Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State

agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making

a residual functional capacity determination, the ALJ must consider all evidence before [her],"

and, although the ALJ may weigh the credibility of the evidence, she must "give some indication

of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Burnett*,

220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such

an indication, the reviewing court cannot tell if significant probative evidence was not credited or

simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by

substantial evidence, [district courts] are bound by those findings, even if [the courts] would

have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292

(3rd Cir. 2012) (internal quotation marks and citation omitted).

Here, the ALJ concluded that Plaintiff retained the RFC to perform sedentary work with

lifting and/or carrying no more than 10 pounds; standing and walking for no more than 2 hours

in an 8-hour workday; sitting for 6 hours in an 8-hour workday with the opportunity to sit for 5

minutes after a half hour of standing and walking; no climbing ladders, ropes, or scaffolds;

frequently climbing ramps and stairs, kneeling, balancing, stooping, crouching, and crawling;

and no exposure to unprotected heights or hazardous machinery.

Plaintiff challenges "the psychiatric portion of the RFC because the ALJ's finding of no

severe impairment is so obviously bereft of evidentiary rationale or medical basis." ECF No. 12

at 24. Plaintiff attacks the ALJ's decision, in assessing the RFC, to assign "some weight" the

opinion of the State Agency Psychiatrist, Dr. Shapiro. Specifically, the ALJ assigned "great

weight" to the opinion that Plaintiff had no limitations in social function, and "little weight" to

the opinion that Plaintiff had moderate limitation in concentration, persistence or pace, and the

conclusion, based on these credibility assessments, that the mental impairments did not impact

Plaintiff's RFC to perform his past work.[2]

---

[2] It appears that he ALJ applied the incorrect criteria in evaluating these findings. The
Social Security Agency issued Revised Medical Criteria for Evaluating Mental Disorders on
September 26, 2016, stating that the rules would go into effect on January 17, 2017. The revised
rules apply only to new applications filed on or after January 17, 2017. *See* 81 F.R. 66138, 2016
WL 5341732; *Snyder v. Berryhill*, No. 17-725, 2018 WL 1911372, at *3 (W.D. Pa. Apr. 23,

Contrary to Plaintiff's contention, in deciding the degree of weight to grant each of these opinions, the ALJ did not simply "recite the evidence and then announce a finding," or "employ his/her own expertise against that of a physician who presents competent medical evidence." ECF No. 12 at 22-23. Rather, the ALJ explained that her decisions were based on her review of the medical evidence, which she discussed at length in the section of her decision classifying Plaintiff's mental impairments as non-severe. Indeed, the ALJ specifically highlighted Dr. Williamson's report as the basis for her decision to grant "little weight" the state psychological examiner's finding of moderate limitations in the areas of concentration, persistence, and pace. In that regard, Dr. Williamson found that Plaintiff could repeat up to 5 digits forwards and 4 digits backwards, could complete simple mathematical calculations, had an average fund of knowledge, had normal thought processes, had intact abstract reasoning, and could recall 1 out of 3 objects at 5- and 10-minute intervals. While true that the ALJ erred in stating that Dr. Williamson found that Plaintiff could accurately complete Serial 7s, when, in fact, he found the opposite, this error was inconsequential in light of the substantial medical evidence indicating that Plaintiff's concentration issues were not severe. Moreover, the ALJ also recounted other record evidence, including Plaintiff's own testimony that he cared for himself and for a pet, watched television and movies, listened to music, prepared meals, grocery shopped, used public transportation, socialized, typed on a computer (at a reduced pace), and used a cell phone. Thus, although some evidence indicates that Plaintiff had problems concentrating, including subjective

---

2018). Although Plaintiff filed his claim in 2013, the ALJ erroneously assigned no weight to the state psychological examiner's findings regarding Plaintiff's activities of daily living and episodes of decompensation because "these categories are no longer evaluated after January 17, 2017." AR 28-29. Nonetheless, the ALJ's decision to assign these opinions no weight was harmless, as the medical examiner found only mild limitations in Plaintiff's activities of daily living and no episodes of decompensation, and nothing in the record contradicts these findings.

testimony from Plaintiff and his roommate, the medical and testimonial evidence in the record adequately support the ALJ's finding that Plaintiff's difficulties in the areas of concentration, persistence, and pace, did not seriously impact his working abilities.[3]

In sum, although Plaintiff reported being depressed and having suicidal thoughts, the bulk of the medical evidence supports the ALJ's findings. This is not a case, as in *Burnett*, where the Third Circuit determined that remand was warranted because the ALJ "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. Thus, the ALJ's decision at step four to assign "some weight" to the State Agency Psychiatrist's opinion was supported by substantial evidence.

## B. Lack of Medical Expert to Determine Disability Onset Date

Plaintiff next argues that the ALJ erred in determining Plaintiff's disability onset date without consulting a medical expert. SSR 83–20 states that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83–20, 1983 WL 31249, at *1. The Third Circuit has applied SSR 83–20 and required a medical advisor when "the impairment at issue is slowly progressing and the alleged onset date is so far in the past that obtaining adequate medical records is impossible." *Thelosen v. Comm'r of Soc. Sec.,* 384 F. App'x 86, 91 (3d Cir. 2010).

Plaintiff's argument is misplaced, however, because the onset date was not in dispute before the ALJ. Indeed, in his application, Plaintiff alleged disability beginning October 1, 2012, which was accepted by all parties throughout the administrative proceeding. A plaintiff may not

---

[3] Plaintiff's complaint with the ALJ's decision to grant "little weight" to the opinion that Plaintiff had no limitation in the area of social functioning is also misplaced. Indeed, the ALJ was *more* generous to Plaintiff than Dr. Shapiro, finding that Plaintiff's difficulty getting along with his sister and business partners warranted a classification of "mild limitation."

challenge the absence of expert testimony regarding the disability onset date when he did not do so at the administrative level. *See Ahmad v. Colvin*, No. 12-6104, 2013 WL 5936630, at *10 (D.N.J. Oct. 31, 2013) ("Because there was no dispute about the onset date throughout the proceedings, the Court does not find error on the ALJ's part as to this issue."); *Cordero v. Comm'r of Soc. Sec.*, No. 13-7068, 2014 WL 7331924, at *8 (D.N.J. Dec. 19, 2014) ("In this case, there is no dispute about the date of onset of January 7, 2008…Therefore, this is not a case requiring a medical expert.").

## IV.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.


Dated:  December 21, 2018                                  /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge